UNITED STATES of America,
Plaintiff-Appellee,

v.

James Wesley McMURRY,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Tommy Cordon EDWARDS,
Defendant-Appellant.

Nos. 85–2249, 85–2252.

United States Court of Appeals,
Tenth Circuit.

Feb. 23, 1987.

Susan M. Otto, Asst. Federal Public Defender (Richard Winterbottom, Asst. Federal Public Defender, on the brief), Tulsa, Okl., for defendant-appellant James Wesley McMurry.

C. Rabon Martin, Tulsa, Okl., for defendant-appellant Tommy Cordon Edwards.

John S. Morgan, Asst. U.S. Atty. (Layn R. Phillips, U.S. Atty., with him on the briefs), Tulsa, Okl., for plaintiff-appellee.

Before BARRETT, SETH and TACHA, Circuit Judges.

SETH, Circuit Judge.

Defendants-appellants, James Wesley McMurry and Tommy Cordon Edwards, were convicted on one count of conspiracy to possess and one count of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and § 846 in a second trial on the indictment.

Appellants contend that the indictment should have been dismissed after the prosecution deliberately caused a mistrial during the first trial. Appellant Edwards also argues that the trial court should have granted his motion for a pretrial *Petersen-Andrews* hearing.

The facts relevant to this appeal are as follows. Defendant McMurry had lived with his nephew, William Eugene Day, III, for a while. After their relationship had soured, Mr. Day established a connection with an FBI agent and became a government informant. He reported that Mr. McMurry and his friend, Mr. Edwards, had engaged in selling cocaine and recounted to the agent the details of a drug sale. Shortly after this sale was consummated the appellants and a Mr. Moncrief were arrested. After these arrests, and in reliance on Mr. Day's information, Tulsa police officers obtained a warrant to search rooms in a Tulsa motel. The search uncovered approximately 31 ounces of cocaine, and articles in the rooms identified the occupant as Mr. McMurry.

During his direct examination by government counsel at the first trial, Mr. Day stated that he had become a government informant in order to prevent a girl's murder. Counsel for appellants moved for a mistrial and the court granted the motion but found that Day's testimony was not the prosecution's fault. The trial court subsequently rejected the defendants' plea of double jeopardy and a motion to dismiss the indictment.

■ Noting that the Double Jeopardy Clause protects a defendant "against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions," the Court in *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267, indicated that bad faith conduct by the prosecutor or judge would constitute a barrier to reprosecution even if the defendant had moved for a mistrial. 424 U.S. at 611, 96 S.Ct. at 1081. However, in *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416, the Supreme Court clarified this exception. It stated that prosecutorial harassment or overreaching by itself, even if sufficient to warrant a mistrial on the defendant's motion, could be insufficient to trigger the double jeopardy bar to retrial. 456 U.S. at 675–76, 102 S.Ct. at 2089. The Court adopted an intent-based standard and concluded that:

"[o]nly where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion."

Our cases have taken an equally restrictive view of this narrow exception. *See, e.g.,*

*United States v. Poe,* 713 F.2d 579, 583 (10th Cir.).

Appellants argue that they were entitled to raise the double jeopardy bar to the second prosecution because in the first trial the government attorney was "grossly negligent" in asking his witness why he became an informant when the attorney knew that Mr. Day's answer to that question might be prejudicial. Appellants would have us shift our inquiry from prosecutorial intent to force defendants to move for a mistrial to gross negligence. We have not decided whether gross negligence alone would trigger the double jeopardy bar. *See, United States v. Pollack,* 640 F.2d 1152, 1155 (10th Cir.). We do not reach the question here because the record demonstrates that the conduct of the prosecution did not rise to the level of gross negligence.

After Mr. Day stated that he became an informant to prevent a girl's murder, a bench conference ensued. The Assistant United States Attorney stated that in preparing for trial, he had explained to Mr. Day that Mr. Day should not mention murder but needed to say something more general and apparently an understanding was reached. The trial judge specifically found that the government's counsel had not invited Mr. Day's prejudicial answer. At the time the court granted the mistrial counsel for the appellants agreed that the Assistant United States Attorney did not intend to provoke Mr. Day's prejudicial remark or the consequent mistrial motions. The answer of the witness was thus recognized to be a surprise to the prosecutor.

Absent any showing of intent in the record and particularly in light of defense counsel's contemporaneous agreement with the trial judge's assessment that the Assistant United States Attorney did not deliberately provoke a mistrial, we cannot conclude that double jeopardy barred a second prosecution.

■ Mr. Edwards contends that the district court's refusal to hold a pretrial hearing on the admissibility of the out of court statements of a co-conspirator prejudiced

him. In *United States v. Andrews,* 585 F.2d 961 (10th Cir.), we determined when a statement of a co-conspirator is admissible under Fed.R.Evid. 801(d)(2)(E), and held that prior to the admission of a co-conspirator's statement the trial judge must make the required preliminary factual determinations. We treated the practical aspects of the *Andrews* burden in *United States v. Petersen,* 611 F.2d 1313 (10th Cir.), and examined the order of proof preferences. *Petersen* does not dictate that proof be made in a certain order but that matter "is within the discretion of the trial judge." *United States v. Harenberg,* 732 F.2d 1507, 1513 (10th Cir.). *Petersen* does not require a trial judge to hold a preliminary hearing on the admissibility of a co-conspirator's statements because a "trial court has no obligation to determine the admissibility of possible hearsay at the pretrial stage." *United States v. Monaco,* 700 F.2d 577, 581 (10th Cir.).

A review of the record discloses no reversible error in the procedure the trial judge followed prior to admitting the out of court statements of co-conspirators or in the timing of the trial judge's finding that the *Petersen-Andrews* burden had been met. The record reveals that before the out of court statements of appellants were allowed into evidence the court explicitly found that the *Petersen-Andrews* requirements were met and this was sufficient.

■ Appellants contend that the trial judge's statement to the jury that he had to catch a plane in several hours and that if it had not finished deliberating by then he would call a recess over the weekend and allow deliberations to continue the following week constituted an impermissible *Allen* charge. We must however conclude that the statement was simply not an instruction at all. The judge's statement of the schedule for jury deliberations took place in the presence of Mr. McMurry's counsel and the Assistant United States Attorney but in the absence of appellants and of Mr. Edwards' counsel. The statement was made after the jury had deliber-

ated about four hours on a Thursday and about three hours on Friday. The judge had called the jury into the courtroom to discuss lunch arrangements. We must view this as no more than an explanation about the schedule for lunch and for subsequent deliberations. With the weekend having arrived it was necessary to give the jury a schedule for the balance of the day and the next week. The jury was entitled to such an explanation for its plans. It had nothing whatever to do with the length of deliberations but was, again, a needed schedule. The explanation can in no way be considered as an instruction.

We have considered all the other issues raised by appellants and find them without merit.

The judgments of the district court therefore are AFFIRMED.